IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JOHN S. BUMGARDNER,

    Plaintiff,

v().                                  Civil Action No. 5:08CV23
                                          (STAMP)
McELROY COAL COMPANY and
CONSOL ENERGY, INC.,

    Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING AS MOOT DEFENDANTS' MOTIONS IN LIMINE**

I. Procedural History

This dispute arises out of the employment termination of the plaintiff, John S. Bumgardner ("Bumgardner") by the defendants, McElroy Coal Company and Consol Energy, Inc. ("defendants" or "employer"). On December 12, 2007, Bumgardner sued the defendants in the Circuit Court of Marshall County, West Virginia. The defendants then removed this action to this Court at which time they filed an answer to the complaint and a counterclaim.[1] Subsequently, the defendants moved for summary judgment. Bumgardner timely filed a response in opposition to the motion for summary judgment, to which the defendants have timely replied.

---

[1] The parties have jointly tendered to this Court a proposed agreed order which would dismiss the counterclaim if the defendants' motion for summary judgment is granted. In light of this Court's decision to grant the defendants' motion for summary judgment, as discussed below, the joint agreed order dismissing the defendants' counterclaim will be entered.

The defendants' motion for summary judgment has now been fully briefed by the parties and is ripe for review. After considering the parties' briefings and the applicable law, this Court finds that the defendants' motion for summary judgment must be granted. Additionally, because the defendants' motion for summary judgment will be granted, the defendants' motions in limine which are also currently pending before this Court, will be denied as moot.[2]

## II. Facts

During the period relevant to this action, Bumgardner was employed by the defendants as a section foreman at their facility in Marshall County, West Virginia. On or about August 14, 2007, Bumgardner and a co-worker were on duty in the defendants' mine pulling up on a pump which was stuck in the mud. Bumgardner alleges that as he was pulling on the pump, he injured his back and began to have muscle spasms. Bumgardner informed his co-worker that his back was hurting, but he did not mention that the injury had just occurred.

Between August 14, 2007 and August 30, 2007, Bumgardner made several visits to medical facilities for treatment and physical therapy. Among other forms of treatment, Bumgardner received oral medication for pain management. His treating physician also

---

[2]By letter dated November 6, 2008, this Court advised the parties of tentative rulings on the defendants' motion for summary judgment and the defendants' motions in limine. This memorandum opinion and order sets forth those ruling in more detail.

recommended that Bumgardner not return to work until September 11, 2007. At no time does Bumgardner appear to have informed his medical care providers that his back injury resulted from a work-related incident.

Bumgardner took medical leave for his injury, but he did not file an accident report or otherwise inform his employer that the injury was work-related. Between August 14, 2007 and August 30, 2007, the defendants contacted Bumgardner at home and offered him transitional work, which involved office duties such as completing mine inspection books and other paperwork. Bumgardner declined, stating that his prescription narcotic pain medication prevented him from driving the approximately seventy minutes both to and from work. Again, however, Bumgardner did not mention that his injury had occurred on the job.

While Bumgardner was on medical leave, the defendants became suspicious that he was not, in fact, injured, and arranged for Litigation Solutions, Inc. ("LSI") to conduct surveillance of Bumgardner's activities. On August 22, 23, and 26-29, 2007, LSI conducted the requested surveillance. According to the defendants, all surveillance was done from public locations, and all videotaped activities undertaken by Bumgardner occurred in plain view.[3] As a result of the surveillance, the defendants learned that Bumgardner engaged in physical activity on August 27, 2007 and August 28, 2007

---

[3]Bumgardner does not dispute these assertions.

which suggested that Bumgardner's injury was not sufficiently serious to warrant his taking medical leave. On August 27, 2007, Bumgardner was observed and videotaped helping another individual put a roof on a building located on Bumgardner's property. Specifically, Bumgardner was recorded climbing and descending a ladder, pull-starting a generator, throwing items onto the roof, and carrying forty- to fifty-pound rolled roofing bundles up five to six rungs on a ladder. Similarly, on August 28, 2007, Bumgardner was observed and videotaped performing various outdoor work on his property, including operating a tractor.

After reviewing the surveillance footage, mine superintendent Richard Harris ("Harris") contacted Bumgardner by telephone on August 30, 2007 to discuss Bumgardner's activities relating to the roofing project. Bumgardner initially denied having worked on the roofing project, but when informed about the video footage, he admitted that he assisted with the roofing work because he felt no pain while taking his prescribed medication. At the end of the conversation, Harris suggested that the two men discuss the matter in person.

Later that day, Bumgardner met with Harris. At that meeting, Harris again confronted Bumgardner about the physical activities Bumgardner had undertaken, as videotaped, while on medical leave for his back injury. Bumgardner repeated his answer that he did not feel pain while he was taking medication. Harris concluded

4

that Bumgardner had not been truthful when first confronted about his involvement with the roofing work and that Bumgardner had misrepresented the reason for taking leave from work. Harris informed Bumgardner that he was being discharged, and a formal record of the termination was made on August 31, 2007. At no time before or during the August 30, 2007 meeting does Bumgardner appear to have informed his employer that his back injury was work-related.

On November 20, 2007, approximately three months after the defendants discharged him, Bumgardner attempted to file a workers' compensation claim. However, he erroneously filed his claim with an insurance company, BrickStreet Mutual Insurance Company, which informed Bumgardner on December 3, 2007 that the employer is self-insured for purposes of workers' compensation and instructed Bumgardner to file his claim directly with his employer. Accordingly, on June 30, 2008--nearly ten months after his employment was terminated--Bumgardner, by counsel, requested that the defendants process a workers' compensation claim on Bumgardner's behalf.

Meanwhile, on December 12, 2007, Bumgardner initiated this action. His complaint states four causes of action and a claim for punitive damages. Count I alleges that the defendants terminated Bumgardner's employment while he was off work because of a compensable injury, and that, therefore, the defendants retaliated

against him on the basis of his eligibility to receive workers' compensation benefits, in violation of West Virginia Code § 25-5A-3. Count II alleges that at the time of his discharge, Bumgardner was a qualified person with a disability of which the defendants were aware and that, therefore, the defendants discriminated against him on the basis of his disability, in violation of the West Virginia Human Rights Act.[4] Count III alleges that his termination violated West Virginia's public policy against terminating an employee who is off work as the result of a work-related injury. Count IV alleges that the defendants discharged Bumgardner as a result of surveillance conducted at their request and that such surveillance was negligent, reckless, and vexatious. Count V alleges that the defendants' conduct was intentional, wanton, willful, and/or malicious and that Bumgardner is therefore entitled to punitive damages.

### III. Legal Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

---

[4]At the pretrial conference held on December 2, 2008, Bumgardner's counsel represented to this Court that Bumgardner has abandoned Count II of his complaint. Therefore, this order does not address the issues raised by the parties relating to Count II.

as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).

However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial-- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)(Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. See Oksanen v. Page Mem'l Hosp., 912 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV. Discussion

Viewing the facts in the light most favorable to Bumgardner, as the non-moving party, this Court finds that the defendants have shown the absence of any genuine issue of material fact and that the facts surrounding Bumgardner's termination do not establish the violations under West Virginia law which Bumgardner alleges the defendants to have committed.

A. Count I: Workers' Compensation Retaliation and Discrimination

Bumgardner's claim for workers' compensation retaliation, as set forth in Count I of his complaint, must be dismissed. The West Virginia Workers' Compensation Act provides, in pertinent part, "No

employer shall discriminate in any manner against any of his present or former employees because of such present or former employee's receipt of or attempt to receive benefits under [the Act.]"  W. Va. Code § 23-5A-1.

Here, Bumgardner claims that the defendants discharged him in retaliation because his alleged work-related injury made him eligible to apply for workers' compensation benefits.  However, Bumgardner neither received nor attempted to receive workers' compensation benefits until several months after his employment was terminated.  Moreover, the defendants were not made aware at any time before discharging Bumgardner that his injury allegedly occurred on the job.  Bumgardner did not inform anyone at his place of employment that he had injured his back at work, nor did he file an accident report.  Under these circumstances, the defendants could not have engaged in workers' compensation retaliation against Bumgardner because they had no knowledge before terminating him that he had allegedly suffered a work-related injury.

To the extent that Bumgardner alleges that his discharge constitutes discrimination under § 23-5A-3(a), that allegation lacks merit.  Section 23-5A-3(a) describes conduct constituting discrimination under § 23-5A-1:

> It shall be a discriminatory practice within the meaning of section one of this article to terminate an injured employee while the injured employee is off work due to a compensable injury within the meaning of article four of this chapter and is receiving or is eligible to receive temporary total disability benefits, unless the injured

> employee has committed a separate dischargeable offense. A separate dischargeable offense shall mean misconduct by the injured employee wholly unrelated to the injury or the absence of work resulting from the injury. A separate dischargeable offense shall not include absence resulting from the injury or from the inclusion or aggregation of absence due to the injury with any other absence from work.

W. Va. Code § 23-5A-3(a). Section 23-4-1, in turn, provides that workers' compensation benefits are payable where a covered employee has "received personal injuries in the course of and resulting from [his or her] covered employment . . . ." W. Va. Code § 23-4-1.

In this action, Bumgardner claims that he received his back injury at work and that was receiving temporary total disability benefits. Therefore, he argues, he was discharged while he was off work with a compensable injury and has established the requisite elements under § 25-5A-3(a). However, the record demonstrates that Bumgardner was receiving short-term disability benefits under an employer-sponsored plan administered by a third-party administrator, not temporary total disability benefits, and nothing before this Court suggests that he was eligible to receive temporary total disability benefits. Further, Bumgardner has presented no evidence that he informed his employer before he was terminated that he had sustained a work-related injury. In light of Bumgardner's failure to show that he received or was eligible to receive temporary total disability benefits or that the defendants were aware of his alleged work-related injury, the defendants could not have discriminated against him under § 23-5A-3(a).

10

In sum, Bumgardner's workers' compensation retaliation and discrimination claims fail because nothing on the record before this Court suggests that the defendants knew or had reason to know that Bumgardner was off work because of an injury he allegedly sustained on the job. Accordingly, Count I of the complaint must be dismissed.

B.  Count III: Wrongful Termination in Violation of Substantial Public Policy

Count III of Bumgardner's complaint, which alleges that the defendants violated West Virginia's substantial public policy against discharging an employee while that employee is off work due to a work-related injury, must be dismissed for the same reasons that Count I must be dismissed. Under West Virginia law, a cause of action for wrongful termination lies where "the employer's motivation for the discharge is to contravene some substantial public policy principle. . . ." Harless v. First Nat'l Bank in Fairmont, 246 S.E.2d 270, 275 (W. Va. 1978). Such public policy principles tend to be expressly provided by statute. See Birthisel v. Tri-Cities Health Services Corp., 424 S.E.2d 606 (W. Va. 1992) (citing Collins v. Elkay Mining Co., 371 S.E.2d 46 (W. Va. 1988)(West Virginia Mine Safety Act, W. Va. Code § 22A-1A-20); McClung v. Marion County Comm'n., 360 S.E.2d 221 (W. Va. 1987)(Wage and Hour Act, W. Va. Code § 21-5C-8); Shanholz v. Monongahela Power Co., 270 S.E.2d 178 (W. Va. 1980)(Workers' Compensation Act, W. Va.

Code § 23-5A-1); Harless v. First Nat'l Bank in Fairmont, 246 S.E.2d 270, 275 (W. Va. 1978)(West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-1-101, et seq.)).

Here, Bumgardner argues that the substantial public policy which the defendants are alleged to have violated is expressed in section 23-5A-3 of the West Virginia Workers' Compensation Act. As noted above, however, at no point up to and including the time of termination did the defendants know that Bumgardner's back injury was work related. Absent such knowledge, the defendants could not have been motivated by a desire to contravene West Virginia's substantial public policy prohibiting discrimination by employers against employees making workers' compensation claims. Therefore, Count III of Bumgardner's complaint must be dismissed.

C. Count IV: Negligent Surveillance

Bumgardner's claim for negligent surveillance, which, as set forth in Count IV of his complaint, appears to allege that the defendants negligently discharged Bumgardner on the basis of the surveillance tape, must be dismissed. Bumgardner alleges that the defendants negligently relied solely on the surveillance videotape recorded by LSI showing Bumgardner performing various physical activities when the defendants decided to discharge him rather than obtaining and considering additional medical evidence or otherwise investigating the facts surrounding his injury. Bumgardner also seems to allege that the defendants negligently failed to consider

that he was taking medication which enabled him to perform physical labor without pain but which prohibited him from going to work because he could not drive while taking the medication.

Bumgardner cites no law, and this Court has located none, imposing a duty on an employer to conduct an independent investigation into other circumstances which explain surveillance evidence tending to show that an allegedly injured employee is actually able to work.  In the absence of any authority suggesting otherwise, this Court declines to find that the defendants were required to do any more than they did before terminating Bumgardner.  Accordingly, Count IV of Bumgardner's complaint must be dismissed

Having considered the facts and all reasonable inferences in the light most favorable to Bumgardner, as the non-moving party, and having determined that this case presents no genuine issue of material fact, this Court finds that Counts I, III, and IV must be dismissed.  In light of this finding, and recognizing that Bumgardner has abandoned Count II, this Court concludes that the defendants' motion for summary judgment must be granted.

### V. Conclusion

Based upon the foregoing discussion, the defendants' motion for summary judgment is GRANTED, and the defendants' motions in limine are DENIED AS MOOT.  It is ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:    March 2, 2009

<u>/s/ Frederick P. Stamp, Jr.</u>
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE